IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COLONY NATIONAL INSURANCE COMPANY | § § § | |
| *Plaintiff,* | § § | |
| VS. | § § | Civil Action No. _____ |
| | § § | |
| UNIQUE INDUSTRIAL PRODUCT COMPANY | § § § | |
| *Defendants.* | § § | |

COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES,** Plaintiff Colony National Insurance Company ("Colony"), and respectfully represents to the Court as follows:

## 1.
## Introduction

This is an action for declaratory judgment to determine whether Colony has a duty to defend and/or indemnify Defendant Unique Industrial Product Company ("Unique") under policies of liability insurance issued by Colony to Unique against the claims raised by Uponor, Inc. ("Uponor") and Radiant Technology, Inc. ("RTI"), in two related lawsuits. The first of these lawsuits is styled *Uponor, Inc. v. Unique Industrial Product Company,* in the United States District Court for the Southern District of Texas, Houston Division, bearing Cause No. 07-2986 (The "Texas Lawsuit"). The second is styled *John and Helen McGregor, on behalf of themselves and all others similarly situated v. Uponor, Inc., successor to Uponor North America, Inc. and Radiant Technology, Inc., v. Unique Industrial Product Company*, Complaint in Class

Action, Cause No. 09-cv-1136/ADM/JJK, in the United States District Court, District of Minnesota (the "Minnesota Lawsuit").  Together, the Texas Lawsuit and Minnesota Lawsuit are referred to herein as the "Underlying Lawsuits."

## 2.
## Parties

Plaintiff Colony Insurance Company is a Virginia insurance company authorized to conduct business in the state of Texas.

Defendant Unique Industrial Product Company is a Texas corporation that may be served with process by serving its registered agent, Jugal Malani, at 12600 Cardinal Meadow, Sugar Land, Texas 77478, or at any other location where he may be found.

## 3.
## Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. §1332, as plaintiff is a Virginia citizen, having been incorporated in the Commonwealth of Virginia and having its principal place of business in Virginia.  Defendant is a citizen of a state other than Virginia.  The amount in controversy, exclusive of interest and costs, well exceeds $75,000.00.

## 4.
## Factual Allegations In The Underlying Petitions

The Underlying Lawsuits are based on the same operative facts.  According to the petitions in the Underlying Lawsuits, Uponor's claims arose out of Unique's sales of defective plumbing fittings made of brass and PEX (a plastic compound) to Uponor.  Uponor is an international supplier of plumbing and heating systems for residential and commercial building markets.  Uponor resold many of the products obtained from Unique to its customers, primarily residential construction companies and plumbers.  Unique did not manufacture the fittings itself, rather, it purchased them from overseas suppliers.  Purportedly, one of these suppliers sold

Unique a bad batch of fittings.  In 2004, the products began to fail, causing plumbing systems to leak and flood the homes in which they were installed.  In August 2006, in apparent response to the defect claims, and Uponor's refusal to accept any further product from Unique, the parties had a meeting wherein Unique allegedly obligated itself to pay past and future claims resulting from its allegedly defective products.  In exchange for Unique's agreement to pay these claims, Uponor agreed to accept and pay for the remaining shipments of Unique's products.  In this meeting, Unique also purportedly agreed to take return of the defective fittings sold to "third persons."  Uponor contends that Unique breached this agreement.  Colony was not a part of the meeting or the agreement, and did not consent to it.

In the Texas Lawsuit, Uponor alleges breach of contract, breach of express warranty of merchantability, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, common law indemnity, breach of express indemnity, strict products liability, and negligence.

The Minnesota Lawsuit is designated a class action lawsuit, wherein the plaintiff alleges that "[t]he number of members of the putative class is believed to be tens of thousands of individuals and/or entities that own properties with [Uponor's] pex plumbing systems with F1807 brass insert fittings."  Uponor has asserted third party claims against Unique in that lawsuit for breach of contract, breach of express indemnity, negligence, consumer fraud, unlawful trade practices, deceptive trade practices, and contribution in the class action suit against Uponor.  Uponor has claimed an uncertain amount of damages in excess of this court's jurisdictional minimum.

The policies of insurance issued by Colony provide no coverage for the Underlying Lawsuits.

**5.**
**Colony Policies of Insurance**

Colony is a liability insurance carrier. Colony issued a general liability policy to Unique Industrial Product Company; DWV Casting Company; Unique Realty Group, LP; and Unique Realty Management, bearing policy number AR4260140, with effective dates of October 16, 2005 – October 16, 2006.   This policy was subsequently renewed under policy number AR4260140A, an identical policy, with effective dates of October 16, 2006 – October 16, 2007. That policy was cancelled effective February, 2007. Together, policies AR4260140 and AR4260140A are referred to herein as the "Policies."  As set forth below, the Policies provide no coverage for the claims in the Underlying Lawsuits, and Colony has no duty to defend or indemnity Unique against these claims.

**6.**
**Known Loss/Fortuity/Property Damage Not Occurring Within Policy Effective Dates**

The existence of the damages and claims of Uponor and RTI were known by Unique prior to the inception of the first Colony Policy, barring coverage under the doctrine of fortuity and under the terms of both Policies, which provide:

    a. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" had occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or

Case 4:10-cv-01234   Document 1   Filed in TXSD on 04/16/10   Page 5 of 10

after the policy period will be deemed to have been known prior to the policy period.

b. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1 of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

c. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1 of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

The Policies do not cover damages that occur outside the effective dates of the Policies. Further, Uponor's pleadings in the Underlying Lawsuits specifically assert that Uponor made the loss known to Unique in June 2004. Further, Unique's coverage with Colony was effective, at the earliest, on October 16, 2005, and Unique had notice of the ongoing property damage loss prior to that date. As such, any continuation of the loss after the inception of the Policy is not covered.

**7.**
**Voluntary Payment and Assumption of Liability in the Underlying Lawsuits**

The Colony Policy contains the following provision:

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

The Underlying Lawsuits specifically allege that Unique voluntarily made payments and assumed obligations without Colony's consent. Colony has been prejudiced because Unique

implicitly or expressly agreed that its products were defective, agreed to replace them, agreed to pay past claims, and agreed to pay future claims. Unique's breach of the voluntary payment and assumption of liability provision in the Policies precludes any duty to defend or indemnify Unique in the Underlying Lawsuits.

**8.**
**Late Notice**

The Policy provides, with respect to notice:

2.        **Duties in the Event of Occurrence, Offense, Claim or Suit**

a.        **You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.** To the extent possible, notice should include:

        (1)    How, when and where the "occurrence" or offense took place;
        (2)    The names and addresses of any injured persons and witnesses; and
        (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

c.        **If a claim is made or "suit" is brought against any insured, you must:**

        (1)    Immediately record the specifics of the claim or "suit" and the date received; and
        **(2)    Notify us as soon as practicable.**

        **You must see to it that we receive written notice of the claim or "suit" as soon as practicable.**

d.        You and any other involved insured must:

        **(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"**
        (2)    Authorize us to obtain records and other information;
        **(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit;" and**
        (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(Emphasis added).

The Colony Policies issued to Unique provide no coverage for Uponor's allegations because notice of the claim was not given to Colony as soon as practicable. In addition, neither the petition, nor any other filings in the Texas Lawsuit were turned over to Colony immediately as required by the Policy. Colony has been prejudiced by the late notice because it has been deprived of an opportunity to investigate the claim or mount an adequate defense. Both timely notice of a claim and immediate notice of a lawsuit are conditions precedent to coverage. As a result, Colony has no duty to defend or indemnify Unique in the Underlying Lawsuits.

**9.**
**Exclusions**

Even if the claims were not barred by late notice, voluntary assumption of liability, or fortuity, various exclusions apply that would preclude coverage.

Exclusion k.

**Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

All or part of the loss is barred by application of this exclusion.

Exclusion m.

**Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

All or part of the loss is barred by application of this exclusion.

Exclusion n.

**Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)      "Your product";
(2)      "Your work;" or
(3)      "Impaired property;"

If such product, work, property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b.      You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
a.      The repair, replacement, adjustment or removal or "your product" or "your work;" or
b.      Your fulfilling the terms of the contract or agreement.

All or part of the loss is barred by application of this exclusion.

Exclusion b.

**b.      Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**      That the insured would have in the absence of the contract or agreement; or
**(2)**      Assumed in a contract or agreement that is an "insured contract," provided the "bodily

injury" or "property damage" occurs subsequent   to   the execution of the        contract or agreement.

All or part of the loss is barred by application of this exclusion.

Exclusion a.

**a.       Intentional Injury**

The Policy provides that there is no coverage for property damage intended or expected from the standpoint of the insured.  All or part of the loss is barred by application of this exclusion.

**10.**
**No "Property Damage" or "Bodily Injury"**

The Policies only cover legal liability arising out of "bodily injury" or "property damage".

"Property damage" means:

> a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The complaints in the Underlying Lawsuits allege only economic losses, which are neither "bodily injury" nor "property damage".  As such, Colony has no duty to defend or indemnify Unique against these claims.

**11.**
**Alternatively, There Is Only One "Occurrence"**

In the alternative, the losses are all part of a single "occurrence", and Colony is entitled to a declaration that only one occurrence limit applies.

9

**12.**
**Reservation Regarding Amendment**

Colony reserves the right to amend as necessary to take into account additional claims that may be made against Defendant(s).

**WHEREFORE, PREMISES CONSIDERED,** Colony Insurance Company prays for judgment declaring the rights and obligations of the parties, and including a declaration that it owes no duty to defend or indemnify Unique Industrial Product Company against the claims raised by Uponor in the Underlying Lawsuits, for its attorneys fees and costs incurred in the instant case, and for such other and further relief, at law or in equity, to which Colony may show it is justly entitled.

Respectfully submitted,

*/s John C. Tollefson*
John C. Tollefson – **Attorney-in-Charge**
SBN 20109400
SDN 13149
Stephen A. Melendi
SBN 24041468
SDN 38607
Summer L. Frederick
SBN 24067764
SDN 1047012
Tollefson Bradley Ball & Mitchell, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Telephone:     214-665-0100
Facsimile:     214-665-0199
**ATTORNEYS FOR PLAINTIFF,**
**COLONY NATIONAL INSURANCE**
**COMPANY**

1026-008.DJ.5270.doc